**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RECIEVED
UNION CORRECTIONAL INSTITUTION
JUL 16 202_
BY: _T. A_
FOR MAILING

TIMOTHY ALBRITTON,

     Plaintiff,

v.

CASE NO: 3:21-cv-712-TJC-JBT

(TO BE ASSIGNED)

THE FLORIDA DEPARTMENT OF
CORRECTIONS, an agency of the State
of Florida,
CENTURION OF FLORIDA, LLC, a
Florida Limited Liability Company, and
CORIZON, INC. a Missouri Limited
Liability Company, et al.,

     Defendant(s).

_____/

2021 JUL 19 PM 12: 30

FILED

## COMPLAINT

The Plaintiff, TIMOTHY ALBRITTON ("ALBRITTON"), by and through the

undersigned PRO SE Plaintiff proceeding with no counsel, hereby sues the

Florida Department of Corrections ("FDC"), Centurion of Florida, LLC

("Centurion"), and Corizon, Inc. ("Corizon"), and other below named defendants,

and alleges as follows:

     Other Defendants:

     1) <u>JOHN DOES #1 through 3</u>

1.

Employees of Corizon or Centurion of Florida LLC.

2) <u>ERNESTO L. TOLEDO, MD</u>
Medical Director/Chief Health Officer.

3) <u>Dr. E. PEREZ-LUGO</u>
Official position: Former Chief Health Officer, Union Correctional
Institution.
Individual Capacity

4) <u>THOMAS REIMERS</u>
Health Services Director.
Individual Capacity

5) <u>DANIEL CHERRY</u>
Centurion's Former Medical Director, FDC.
Individual Capacity

6) <u>ERRON CAMPBELL</u>
Medical Director, Centurion Medical.
Individual Capacity

7) <u>JULIE JONES</u>
Official Position: Prior Secretary Florida Department of Corrections.
Individual and Official Capacity, Declaratory & Prospective Injunctive Relief

8) <u>MARK S. INCH</u>
Official Position: Current Secretary Florida Department of Corrections.
Individual and Official Capacity, Declaratory & Prospective Injunctive Relief

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil
rights action regarding condition or events in any prison, jail, or detention center.
42 U.S.C. §1997 e(a).

Plaintiff is warned that any claims for which the administrative grievance
process was not completed prior to filing this lawsuit may be subject to
dismissal. Plaintiff has exhausted all available administrative grievances.

Defendant Inch would possesses all grievances filed in this matter,

however NONE were ever filed before DAA treatment was provided in 2018. Since then Plaintiff has filed two grievances in this matter to determine the defendant's culpability in the damages done to his liver by the defendant's lack of proper medical care, and proper follow-up care to preserve the health of his liver and his very life.

## IV. PREVIOUS LAWSUITS

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1951(g).

NOTE: FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule?"
Yes (     )          No  (XXX)


A. Have you initiated other actions in <u>state or federal court</u> dealing with the same or
          Similar facts / issues involved in this action?
          Yes (    )       No (XXX)

          1. Parties to previous action:
             (a)    Plaintiff(s):    N/A
             (b)    Defendant(s):  N/A
          2. Name of judge:   N/ A   Case #N /A
          3. County and judicial circuit:  N /A
          4. Appropriate filing date:   N /A
          5. If not still pending date of dismissal:  N/ A
          6. Reason for dismissal:  N/A
          7. Facts and claims of case:   N/ A

(Attach additional pages as necessary to list state court cases.)

B. Have you initiated other actions in federal court dealing with the same or similar facts / issues involved in this action?
      Yes (   )     No (XXX)

    1. Parties to previous action:
      (a)    Plaintiff(s):
      (b)    Defendant(s):
    2. Name of judge:
    3. County and judicial circuit:
    4. Appropriate filing date:
    5. If not still pending:
    6. Reason for dismissal:
    7. Facts and claims of case:
    (Attach additional pages as necessary to list state court cases.)

C. Have you initiated <u>other actions</u> (*besides those listed above in Questions (A) and (B))* in either state of federal court that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

      Yes ( )    No  ( XXX )  Please see page at 4

If yes, describe each action in the space provided below. If more than one action, describe  all additional cases on a separate piece of paper, using the same format as below:
    (a) Appellant:
     2. Name of judge:
    (b) Appellee:
     3. County and judicial circuit:
     4. Approximate filing date:
     5. If not still pending, date of dismissal:
     6. Reason for dismissal:
     7. Facts and claims of case:

    1.Parties to previous action:
        (a) Defendant:

(b) Plaintiff:
2.   Name of judge:
3.   County and judicial circuit:
4.   Approximate filing date:
5.   If not still pending, date of granted in part denied in part:
6.   Reason for dismissal:
7.   Facts and claims of case:


(a) Plaintiff:
1.   (b) Defendant:
2.   Name of judge:
3.   County and judicial circuit:
4.   Approximate filing date:
5.   If not still pending, date of dismissal:
6.   Reasons for dismissal:
7.   Facts and claims of case:
        (Attach additional pages as necessary to list state court cases).

D.   Have you ever had any actions in federal court dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each and every case so dismissed:
        Yes  (    )        No (XXX)

Federal Case Filed
1. Parties to previous action:
        (a) Petitioner:
        (b) Respondent:
2. Name of judge:
3. County and judicial circuit:
4. Appropriate filing date:
5. If not still pending, date of dismissal:
6. Reason for dismissal:
7. Facts and claims of case:

1. Parties to previous action:
        (a) Petitioner:
        (b) Respondent:
2. Name of judge:
3. County and judicial circuit:

5.

4. Appropriate filing date:
5. If not still pending, date of Application denial:
6. Reason for dismissal:
7. Facts and claims of case:

(Additional pages as necessary to list the specific instances).

## OVERVIEW

In a nut-shell this whole case is about, the Florida Department of Corrections, and their medical care providers, Corizon and Centurion, and the damaged lives, and in fact lives being lost, because of their failure to provide the proper level of medical care for Hepatitis-C to FDC inmates.

Plaintiff's now near possible fatal liver disease in the future, possible decompensated cirrhosis, now, compensated cirrhosis, fibrosis level 4, resulting from Hepatitus-'C'. A condition for which Defendants would not timely treat solely due to it being too expensive. Defendants Corizon and Centurion utilized a simple policy and practice to deny care by institutional physicians. Deprivation of standard of care was then ratified by prior Secretary Jones, and is continued by now Secretary Inch, via USC positions {Impaired Inmate Services Coordinator}. In this instance, Plaintiff was not blood tested, nor promised care from 2004 through July of 2016 by Corizon, and not until August 24, 2016 when Centurion's role as health care provider began. On August 11th, 2017 were any blood tests provided that confirmed the Plaintiff had a serious Hepatitis-C viral infection in his liver due to elevated liver enzymes. In the September 21st, 2004

6.

blood test was it confirmed that Plaintiff definitely had Hepatitis-C. In the August 9th, 2018 blood test was level F4-5, severe fibrosis found. Care was finally provided on September 7th, through December 7th, 2018 with the DAA drug Epchusa. Such matters as, lying about availability of care and willful concealment of FBOP evaluation and treatment guidelines, underline reprehensible conduct by Defendants. Plaintiff was not treated until almost fifteen months after <u>Hoffer v. Jones,</u> 290 F. Supp. 3D 1292 (U.S. District Court, Northern District of Florida 2017) was decided on November 17th, 2017 and a Preliminary Injunction issued based upon the then Secretary Julie Jones', 'DEFENDAN'S PLAN OF TREATMENT FOR CHRONIC HEPATITIS-C', known as HSB 15.03.09 Supplement #3 and Defendant <u>Centurion's</u> realization that denial of care was no longer possible. However, Defendant Thomas Reimers, Florida Department of Corrections Health Services Director, still refuses to completely empliment HSB 15.03.09 Supplement #3, and the other HS Bullitens governing Hepatitis-C treatment which is not within the proper scope of his duties.

Defendant's Policy to deny treatment for Plaintiff's Hepatitis-C was on behalf of and in the stead of corporate positions regarding employment with contract health provider. The FDC has a "long and sordid history of failing to treat HCV-infected inmates which continues to this date." Each of these

Defendants by vestige of their positions, were charged with an obligation to prevent the actions and inactions of these claims. Facts well plead, medical records produced from FDC, will clearly flesh out the practice of policy enactment. The denial of care, in favor of profit; has resulted in Plaintiff's torment and sorrow and irreparable liver damage, and possible loss of life. Ignoring the requirement to treat Plaintiff's Hepatitis-C has resulted in scarring of his liver and Plaintiff although now, hopefully, cured of the infection, is an F4 on the METAVIR scale and has compensated cirrhosis of his liver. <u>Centurion's</u> deliberate choice to ignore the requirement of Plaintiff's care by not administering DAA's until September 7th, through December 7th, 2018 when DAAs were available in 2013 was a 'regulatory measure.' Such a policy and practice was covered up by prior Secretary Jones, and is continued by now Secretary Inch, via <u>IISC</u> positions as regards health care grievances {HCGs}. Finally, no dietary considerations exist, nor medical prescription supplement drugs and vitamins provided for Plaintiff to help repair, maintain, or to possible regrow his irreparably injured liver, nor are there vitamins of worth provided or purchasable by Plaintiff.

## V.    <u>STATEMENT OF FACTS:</u>

State briefly the FACTS of this case. Describe how each Defendant was

involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. **Do not make any legal arguments or cite to any cases or statutes.** You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extra-ordinary circumstances, no more than five (5) additional pages should be attached. (If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint).

**1)** Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto was under the care, custody and control of the State of Florida, Department of Corrections. Plaintiff was at SFRC, Everglades C.I., Columbia C.I., Lake C.I., Gulf C.I., Suwannee C.I., Correctional Institutions from 2004 until his transfer to Union Correctional Institution in 2017. Plaintiff is currently 63 years of age and has been incarcerated since January 3rd, 2004. At the times relevant hereto, June 2005 when the Hepatitis-C was first discovered at Columbia C.I. until December of 2018, Plaintiff suffered from Hepatitis-C. From 2005 until treatment began on September 7th, through December 7th, 2018 with DAA's the disease had escalated to such a level that Plaintiff was now rated an F4-5 on the METAVIR scale, compensated cirrhosis. The amount of liver

scarring is classified FO (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe fibrosis), or F4 (cirrhosis). The rate at which patients progress along this scale differs among the population. Defendants Corizon and Centurion , via Defendant Inch were all well aware of these facts.

    **2)** Under the June 2014, FBOP Guidelines, adopted by the CDC, patients were supposed to be prioritized for triple drug therapy based upon the advancement of hepatic fibrosis, or cirrhosis, whether the patient is a liver transplant recipient or has a HIV co-infection, or whether the patient has a comorbid medical condition associated with HCV, such as certain types of lymphomas. The degree of fibrosis may be determined in several ways. The AST-to-platelet ratio index ("APRI") is the FBOP-preferred method for non-invasive assessment of hepatic fibrosis and cirrhosis. Liver biopsies and abdominal ultrasounds in this time period could also be used to identify findings consistent with cirrhosis. Although the APRI score is useful in most cases it is not an exact predicator of cirrhosis. Sometimes patients with high APRI scores show no signs of fibrosis or cirrhosis on ultrasounds or biopsies. In June 2014, the FBOP recommend prioritizing patients who had APRI scores of 1.0 or greater, or whose APRI score was between 0.7 and 1.0, along with other findings suggestive of advanced fibrosis. Under these guidelines, Plaintiff's need for treatment was apparent when Defendant Corizon became Plaintiff's health

care provider in 2010 and in January of 2015, Sheila Szalai, ARNP informed Plaintiff that his liver enzymes showed he may have Hep-C and Corizon health care providers told Plaintiff in April of 2005 his Fibrosis level was stage 1, or possibly a stage F2, and when Defendant Centurion became Plaintiff's health care provider in 2016 it had progressed to a stage F3-4.

3) Plaintiff was informed in June, 2015 by (then) treating physician, ARNP Sheila Szalai, Corizon is a defendant in this cause), that Plaintiff suffered from Hepatitis-C, a very serious infection that would advance to liver disease. It was physician's assessment that delay in drug treatment would exponentially increase in the odds against Plaintiff's treatment success and result in liver damage.

4) In July, 2015, the FBOP revised its HCV Guidelines to reflect the availability of new treatments and established the new standard of care. The FBOP provided that certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment. The patients at Level 1, or highest priority, are those with known decompensated cirrhosis, liver transplant candidates or recipients, patients with heptocellular carcinoma, those with comorbid medical conditions associated with HCV, those taking immunosuppressant medications, and newly incarcerated inmates already receiving treatment. Patients at Level 2, or high priority, include those with APRI

scores greater or equal to Level 2.0, those with advanced fibrosis on a liver biopsy. Patients at Level 3 or intermediate priority, include those with APRI scores between 1.5 and 2.0, those with Stage 1 fibrosis on a liver biopsy, those with diabetes mellitus, and those with porphyria cutanea tarda. Patients at Level 4, or routine priority, are those with Stage 0 to stage 1 fibrosis on liver biopsy, and all other cases of HCV infection that meet the criteria for treatment. Under these guidelines, Plaintiff's need for treatment was apparent. Plaintiff was not provided treatment by Corizon LLC, nor Defendant Centurion, until April 13th, 2018 due to cost. Each Defendant acted per custom, policy, as plead *infra*.

5) In April 2016, the FBOP revised its HCV Guidelines to reflect the availability of three new treatment drugs. The 2016 Guidelines did not change the way APRI scores are used to prioritize patients for treatment. Plaintiff still had not received the treatment despite having been recommended in 2014 by Corizon LLC by physician ARNP Sheila Szalai. Under these 2016 guidelines, Plaintiff's need for treatment was apparent. Plaintiff was intentionally ignored and then denied treatment by Centurion, at that time. Each Defendant acted per custom or policy not to treat due to cost.

6) In August 24, 2016, Defendant Centurion replaced Corizon as FDC health care provider. Defendant Centurion was aware of the number of HCV affected prisoners and the policy and custom left in place by Corizon not to

evaluate and or treat per the guidelines of paragraph #2-5, *supra*. Centurion was aware of the FDC grievance process insulating then Corizon then Centurion via FDC Impaired Inmate Services Coordinators IISC} and other agents yet to be identified. Centurion immediately agreed to the 'Corizon method,' that all HCGs grieving deprivation of care would be summarily, boiler plate denied. Both Corizon and Centurion had complicit approval by prior Defendant Jones (FDC) and continued by now Secretary Inch, through Defendant Thomas Reimers, to conceal existence of and not evaluate or treat per paragaraph #2-5. Moreover, medical code listings for those infected with Hep-C and critically ill offenders were manipulated, by concealing the number of those infected, as well as Plaintiff's condition. This policy and practice was based upon the cost of the evaluation and treatment regimes and FDC agreed to the same. This was a factor in the contract price for prison health care which would have been sizably more, {less profit} had adherence to paragraph #2-5 been required. Indeed, Corizon quit. The Court may take judicial notice of Copeland v. Jones, et al, 4:15-cv-00452-RH-CAS. "hernia settlement," as well as Hoffer v. Jones, 2017 U.S. Dist. LEXIS 194544 (U.S. D.C. Tall. Div. 11-17-2017), regarding both companies individual and join ventures not to treat to increase profit. Defendant Centurion was employed by way of a no bid contract.

7) Corizon's Medical personnel instituted a protocol for treatment of Hepatitis-C that encompassed non-treatment modalities including an A.T.P. Alternative Treatment Plan, that actually parceled Aspirins and Water Pills in lieu of much more expensive DAA drugs.

8) Appearing by way of no bid contract Defendant Centurion replaced Corizon's contract on August 24, 2016, becoming FDC health care provider. Corizon's contract contained the proviso re chronic diseases on page 6, paragraph #2. The relevant section provides:

> "Intervention for inmates with chronic disease must meet
>
> Generally recognized standard of care."

The Alternative Treatment Plan which involved aspirins and water pills was a mock treatment and departed in so stark a manner from 'recognized standard of care' mandated by contract, that it constitutes deliberate indifference. This indifference became Centurion's format with approval of Secretary Jones upon advice of Dr. Thomas Reimers.

9) The denial of Corizon's care then gave way to Centurion's denial-delay of acceptable treatment for such an obviously serious medical need. Plaintiff on several occasions encountered Dr. E. Perez-Lugo, then an employee of Defendant Centurion, and was told that care by DAA's was not necessary, but

that Plaintiff was being monitored and would be informed if treatment was necessary. Plaintiff was informed by Defendant <u>Dr. E. Perez-Lugo</u> that if Plaintiff's name was on a treatment list for DAA's, Plaintiff would be contacted when his turn had arrived. It was apparent to <u>Dr. E. Perez-Lugo and all other defendants named herein knew that the delay would exacerbagte the infection and escalate liver scarring.</u> The decision to delay treatment was medically unjustified in violation of standards of care and was fostered by <u>Centurion's</u> policy and practice not to spend month on DAA's . Defendant <u>Jones</u> and now <u>Inch</u>-FDC were well aware of the policy and practice and permitted and assisted in implementation of the same via FDC established custom of denying all health care grievances {HCGs}, by created positions of impaired inmate services coordinator {IISC} et. al. During this period, on Ebony O. Harvey, repeatedly appears in FC, HCG records as <u>IISC</u> , establishing "boiler plate" pattern of denials and "don't call us we'll call you" responses. In this instance, Plaintiff was advised that a liver biopsy is not clinically indicated at this time. However, you are being approved to the extent that you met the criteria for management and you will be advised when this will begin. In the meanwhile you will continue to be monitored in the chronic illness clinic, which may include further testing, to ensure that there is no deterioration pending the start of your medication regimen.

**10)**When Defendant Centurion became FDC health care provider, up to 90% of the persons employed were those previously employed by Corizon LLC. Including defendant Dr. Thomas Reimers. Defendant Centurion was at the time of their no bid contract award, aware of the large numbers of HCV infected prisoners, and the obligation to provide the FBOP—CDC standards of care. Nonetheless, Defendant Centurion would not spend the funds to treat Plaintiff with DAA's and Defendant Jones had an agreement with persons yet named, not to require Defendant Centurion to purchase DAA's and not to request funds from the State to purchase DAA's.

**11)** As a result of the inescapable judicial mandate to treat with DAA's, beginning on 11-29-2017 Plaintiff was provided the DAA treatment by Defendant Centurion and the same was completed in July, 2018. Plaintiff's liver condition has suffered and has become worse and now life-threatening. Centurion's failure to treat in a timely fashion, *inter alia*, has ultimately led to needless and extreme abdomen pain, emotional distress, fatigue an overall decreased life-style, an a loss of weight. Plaintiff once weighed 220 pounds and stood five foot eleven inches in height. As of July 7th, 2018 Plaintiff's weight had plummet to only 190 lbs. Plaintiff suffers from severe pain in his abdomen daily. Severe fatigue on a daily basis. He is apprehensive about and fearfully anticipates, liver failure. He suffers from extreme loss of sleep. As a result of the unreasonable

delay, February 5th, 2016—to April 13th, 2018, Plaintiff's health underwent considerable erosion. The harm is already irreparable in the sense that it is beyond remediation. As early as 2009, various texts accepted by the medical community bore witnesses to the advantages of prompt treatment. See for example: Living With Hepatitis-C, 5th Edition, Mr. Gregory T. Everson, M.D. F.A.C.P. 2009, pg. #160, stating in sum, "If you had advanced fibrosis or cirrhosis, you are at risk for liver cancer even if you are a sustained responder and no longer have Hepatitis-C. Additionally, "…[p]atients with advanced fibrosis or cirrhosis run a considerable lifetime risk of developing hepatoma…" (id. At pg. #199) "As blood backs up in the spleen, cells become trapped and are destroyed—resulting in a decrease in platelets, red cells, and white cells." Plaintiff has a decrease in platelet levels, both red and white cells.

**11**) When Defendant Centurion assumed Corizon's contract on August 24, 2016, it was apparent that Plaintiff had been interviewed by Medical-Service Contractor ARNP Sheila Szalai Corizon Physician, on August 18, 2015, the fourth different Clinician in fifteen months noted that timely course of treatment for Inmate Harri's Hepatitis-C was necessary. At that time, as well as when Defendant Centurion took over, there existed a list of prisoners that required immediate treatment via DAA's .  It is without dispute that Plaintiff's name was on that list. See paragraph #9, *supra*.

**12**) Defendant <u>Centurion</u> by and through Defendants <u>John Doe #1-3,</u> <u>Thomas Reimers,</u> Director Health Services, <u>Erron Campbell</u>, Medical Director, <u>Daniel Cherry,</u> <u>Centurion's</u> Former Medical Director, FDC., Dr. <u>E. Perez-Lugo,</u> Former Chief Health Officer, UCI, in conjunction with Defendant <u>Jones</u> via policy and practice intentionally did not provide treatment to Plaintiff and utilized the "Corizon Method" of mock monitoring Plaintiff's infection, until Plaintiff's liver was damaged beyond repair. Thus, paragraph #1 through #12, *supra* constitute a clearly established Eighth Amendment violation by one and all defendants of the Plaintiff's guarantee to be free from cruel and unusual punishment.

## VI.   STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

**13) <u>CENTURION OF FLORIDA, LLC</u>**

Plaintiff incorporates by reference paragraphs #1-12, *supra* and states, This Defendant in its official capacity pledged by contract to provide competent health care for Florida prisoners upon assuming the Corizion LLC contract with

18.

Defendant <u>Jones</u> FDC, State of Florida, via a no-bid award. This Defendant understood that statutory obligation of care existed via special obligation of Defendant <u>Jones</u>, per Florida Statute. 20.315 (3). In so contracting, Defendant pledged to provide care within accepted medical norms and not to deprive need prisoners of critical care because of cost. This for profit Defendant was well aware of the thousands of HCV infected FDC prisoners as well as the standards of care plead *supra*, chose to disregard obligation to provide critical care for serious medical needs of Plaintiff, via policy, practice and custom, until Plaintiff's liver was irreparably damaged. The motivating force was not to spend money, thusly increasing profits. As a result this Defendant rewarded each of the Defendants (excepting Jones and Inch) with salary raises, bonuses and other incentives upon profit increases, in furtherance of advancement of the blind eye, no treatment policy, practice an custom. This policy and custom of operation unimpeded and ratified in furtherance by Defendant Secretary <u>Jones</u>, IISC positions. When the obligation to care was taken over by Defendant <u>Centurion</u>. It has already reached agreement with the Defendants of paragraph 13-2__, *infra*, not to treat infected

Inmates—Plaintiff due to cost. This conduct violated Plaintiff's clearly established 8th Amendment guarantee to be free from cruel and unusual punishment. This Defendant's actions and inactions were under the color of

state law and in the furtherance of profit per policy and practice that continues to this date of July 2021.

**14**) **JOHN DOE #1-3,**

Plaintiff incorporates by reference paragraphs #1-12, *supra* and states: Defendants <u>Corizon</u> and <u>Centurion</u>, by and through its agents <u>John Doe #1-3,</u> referred to as 'sound clinicians' repeatedly by Defendant <u>E. Perez-Lugo</u> throughout the health care grievance process, knew that the FBOP-CDC guideline change of 2014-2016, mandated that Plaintiff receive evaluation and DAA's {the Cure}, and other designated care. These Defendants knew from inception of replacing Defendant <u>Corizon</u> that Defendant <u>Centurion</u> would not spend the funds necessary to treat Plaintiff and others infected with HCV. As a result of their agreement with Defendant <u>Centurion</u> and Defendants named herein, did further the policy and custom of non-treatment with DAA's as a result of cost by ordering that Plaintiff not be treated and that the standard of care be ignored. This conduct continued until judicial mandate to treat was apparent and violated Plaintiff's clearly established 8th Amendment guarantee to be free from cruel and unusual punishment. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit. The Defendant's actions and inactions were under the color of state law and the moving force of the continuing policy and practice was furtherance of profit.

Each of these Defendants are sued in their individual capacities.

**15) THOMAS REIMERS** Director Health Services

Plaintiff incorporates by reference paragraphs #1-12, *supra* and states: This Defendant was charged by position to direct over-all health services to *inter alia*, prisoners' infected with the Hepatitis-C virus. This Defendant did act in agreement to prevent evaluation and treatment of infected prisoners / Plaintiff, per policy and practice of Corizon and Centurion as directed and implemented by *inter alia* Defendants John Does #1-3. Each Defendant was in agreement not to implement applicable standards of care, required suppression of numbers of infected prisoners and required John Doe #1-3, Medical-Service Contractor ARNP Sheila Szalai Corizon, and Physician Dr. E. Perez-Lugo, Former, Chief Health Officer UCI, to comply with the policy and practice of suppression of existence of FBOP evaluation and treatment and to deny care. The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. Defendants Corizon and Centurion rewarded each Defendant with pay incentives and other profit sharing bonuses resulting from the policy and practice. This Defendant knew of the 2016 FBOP-CDC guideline changes mandating care for Plaintiff and ignored obligation to provide care. This Defendant utilized his position as Director Health Services to employ policy and custom of Centurion to disregard evaluation and care. This custom was

approved by Defendant <u>Jones</u> and employed to the boiler plate HCG pattern denial. As Director Health Services this Defendant had an obligation to ensure that the protocol, be followed. Instead, acting in concert with Defendants named herein and yet to be identified; this Defendant permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated efforts to save money. This Defendant did so in his individual capacity with wanton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom.   This conduct violates Plaintiff's 8th Amendment guarantee, has caused Plaintiff physical pain an suffering. Plaintiff's failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit. Now, even after Dr. Thomas Reimers assisted in authoring 'DEFENDANT'S PLAN OF TREATMENT FOR CHRONIC HEPATITIS-C in 2017 in response to the <u>Hoffer v. Jones</u> litigation, Dr. Reimers continues to endorse the no evaluation-no treatment policy and custom in effect from 2014 through 2017 and continues in a slightly modified form even today in 2021. Thus, continuing to violate Plaintiff's clearly established 8th Amendment guarantee to be free from cruel and unusual punishment. This Defendant's actions and inactions were under the color of state law and in the furtherance of profit for <u>Centurion</u> per policy and practice that continues to this date of July 2021 where such actions were outside the

22.

scope of his normal duties of the Florida Department of Corrections.

16) **DANIEL CHERRY** Centurion's Former Medical Director, FDC

Plaintiff incorporates by reference paragraphs #1-12, *supra,* and states: This Defendant was charged by position to direct over-all health services for Defendant's Centurion to *inter alia,* prisoners' infected with the virus. This Defendant did act in agreement to prevent evaluation and treatment of infected prisoners / Plaintiff, per policy and practice of Centurion as directed and implemented by Defendants John Doe #1-3. Each Defendant was in agreement not to implement FBOP 2014 and AASLD (American Association for the Study of Liver Diseases); IDSA (Infectious Disease Society of America) standards and evaluation and treatment guidelines. This Defendant, acting in individual capacity, required suppression of numbers of infected prisoners and required John Doe #1-3, E. Perez-Lugo, Former, Chief Health Officer UCI, among other Chief Health Officers and Health Services Administrators at other Institutions in Florida to comply with the policy and practice of suppression of the number of infected prisoners, the existence of FBOP evaluation and treatment guidelines and to deny care. The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. Defendant Centurion rewarded each Defendant with pay incentives and other profit sharing bonuses resulting from the policy and practice. This Defendant knew of the 2014-2016

FBOP-CDC guideline changes mandating care for Plaintiff and ignored requirement to provide care. This Defendant utilized his position as Director Health Services to employ policy and custom of Centurion to disregard FBOP-CDC standards of care. This custom was approved by Defendant Jones and employed a boiler plate HCG, denial to delay and deny care. As Director Health Services this Defendant had an obligation to ensure that standards of care he followed. Instead, acting in consent with Defendants named herein and yet to be indentified; this Defendant permitted, ratified an encouraged the conduct resulting in no care for Plaintiff, as part and parcel of the orchestrated efforts to save money. This Defendant did so in his individual capacity with wanton indifference to the deaths and misery caused by implementation of the no evaluation-no treatment policy and custom. This conduct violates Plaintiff's 8th Amendment guarantee, has caused Plaintiff physical pain, and suffering. Plaintiff's failing liver is a direct result of this Defendant's actions acting in furtherance of the scheme to profit.

### 17) **ERRON CAMPBELL** Medical Director

Plaintiff incorporates by reference paragraphs #1-12, *supra,* and states: This Defendant was charged by position to direct over-all health services for Defendant's Centurion to *inter alia,* prisoners' infected with the Hepititis-C virus in his individual capacity. Defendant Dr. Erron Campbell, did act in agreement to

24.

prevent evaluation and treatment of infected prisoners / Plaintiff, per policy and practice of <u>Corizon</u> as directed and implemented by prior Defendants <u>Woodrow A. Myers, Jr.</u> Chief Operating Officer, <u>Rhonda Almanza</u> Vice-President of Operations, Region II, <u>Helen Sneed,</u> Director of Operations, Region II, and did so knowing that <u>Teresa Woodal</u> Infectious Disease Control, Region II, (possible John Doe Defendants #1-3 in this suit if still employed by <u>Centurion</u> would be in agreement not to implement paragraph 2-4, *supra*. Defendant Dr. Erron Campbell continued the above agreement to prevent evaluation and treatment of infected prisoners / Plaintiff, per policy and practice when Defendant <u>Centurion</u> took over the contract for medical care of Florida FDOC. Prisoners from Corizon in August of 2016. The moving force behind this policy, practice was to cut costs by not spending money on evaluation and treatment. In other words, if we don't know the prisoner is infected with Hepatitis-C, then we don't have any obligation to treat the prisoner. Defendant <u>Centurion</u> awarded each Defendant with pay incentives and other profit sharing bonuses resulting from the above stated policy and practice. Acting in concert with Defendants named herein and yet to be identified, this Defendant knowingly permitted, ratified and encouraged the conduct resulting in no care for Plaintiff as part and parcel of the orchestrated effort to profit. This Defendant did so in his individual capacity with wanton indifference to the deaths and misery caused by implementation of the

no evaluation-no treatment policy and custom. This conduct has caused Plaintiff physical pain and suffering and violates Plaintiff's 8th Amendment guarantee to be free from cruel and unusual punishment. Plaintiff's liver cirrhosis and continuing failing liver is a direct result of this Defendants actions acting in furtherance of the scheme to profit.

   18) **E. PEREZ-LUGO** **Former UCI Chief Health Officer**

   Plaintiff incorporates by reference paragraphs #1-12, *supra*, and states. This Defendant while employed by Centurion at UCI, intentionally did not advise Plaintiff of the 2014-2016 BFP-CDC treatment guideline change, and fabricated excuses as to why Plaintiff had not been treated. Defendant Perez-Lugo denied Plaintiff the DAA cure, meaningful pain relief, and personally denied institutional HCG in furtherance of Centurion's policy to save money, resulting in denial of cure by DAAs as well as to be recommended for possible liver transplant if Plaintiff's liver cirrhosis reached the decompensated cirrhosis stage. Defendant Perez-Lugo never mentioned the possibility of recommendation for a liver transplant. This Defendant lied to Plaintiff when informing Plaintiff that no medical help existed to prevent further spread of the virus and to save Plaintiff's life. Agent of prior Defendant Jones, Michelle Schouest, IISC, and agents yet to be shown, advanced and employed this policy, practice and custom for Defendant Centurion by boiler plate denial of HCGs, extinguishing life saving

26.

treatment and humane ameliorative care. Defendant  E. Perez-Lugo's actions while employed by Defendant Centurion were ratified by Defendants named in this Complaint, per their policy and custom in furtherance of profit. While employed by Defendant Centurion,  E. Perez-Lugo's actions were ratified by Defendants John Does #1-3, Thomas Reimers, Erron Campbell, Daniel Cherry and now Mark S. Inch per policy, custom in furtherance of profit. This Defendant's conduct in his individual capacity, while employed by Corizon and Centurion, resulted in intentional delay of treatment causing deterioration of Plaintiff's liver to an F4 on the METAVIR scale and cirrhosis. Plaintiff has suffered and continues to suffer from the result of this Defendant's conduct. In fulfilling this role, this Defendant acted with ill will, spite and animus in an individual capacity, under the color of state law and the conduct violates the Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment.

**19)** **MARK S. INCH,** Secretary, FDC, Official Capacity

Ms. Jones, and now Mr. Inch, as Secretary of the FDC, is directly responsible for Plaintiff's health care and could not abrogate that responsibility as established by F.S. §20.315(3), by contracting the same to Centurion. Ms. Jones and now Mr. Inch, knew or should have known that the CDC changed treatment guidelines for HCV in 2014-2016, requiring  Defendants Centurion to comply with updated mandate to evaluate and treat Plaintiff and other HCV

infected inmates. Ms. Jones and now Mr. Inch, knew, or now should know, that prior Corizon Defendant Michelle Schouest, IISC, and (possible John Doe Defendant #1-3 in this suit if still employed by Centurion) and other designees to be shown, acted in furtherance of plan, scheme and policy of Defendants Corizon and Centurion to 'boiler plate' denials of health care grievances (HCG) in defiance to FBOP evaluation and treatment guidelines, including DAA's due to cost. Mr.Inch knew, or should have known, from prior Hepatitis-C litigation, Hoffer, supra and, HSB 15.03.09 Supplement #3, that the Defendants named in this complaint, would defy the requirement to properly treat Plaintiff with DAA's and the care described on page 12 of 14 concerning cirrhosis on HSB 15.03.09 Supplement #3 when they were awarded the no bid contract. Prior Defendant Ms. Jones FDC, intentionally declined to request from the State Legislature necessary funds to treat infected prisoners / Plaintiff and refused to require the defendants named herein to treat Plaintiff. This political allegiance agreement deliberately concealed the existence and availability of DAA's and did so with ill will, spite and no concern for humane treatment. Prior Defendant Jones did this in furtherance of profit for Defendant Centurion as Secretary Jones, FDC, knew that if demand for mandated evaluation and care was asserted, Centurion would back out. Thusly, a political allegiance with person(s) yet identified was agreed to that demand for treatment funds and treatment would  not be available. Ms.

Jones knew that the no-bid award of health services to defendant centurion would exclude care for HCV infected prisoners / Plaintiff. Ms. Jones, FDC, and now Mr. Inch, were both aware that the for profit company had an agreement with high ranking State officials to develop FDC policy and practice, to routinely deny evaluation and care, in furtherance of profit. This conduct by Ms. Jones, an now Mr. Inch, has violated and now continues to violate Plaintiff's 8th Amendment guarantee to be free of cruel and unusual punishment.

### VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite cases / statutes.

### COMPENSATORY DAMAGES

**Corizon**

Plaintiff seeks compensatory damages in the amount of One million dollars from Defendant Corizon, plus the costs of the filing and the service of process of this law suit.

**Centurion**

Plaintiff seeks compensatory damages in the amount of One million dollars from Defendant Centurion, plus the costs of the filing and the service of process of this law suit.

Plaintiff seeks compensatory damages in the amount of $500,000 from

Defendant <u>John Doe #1-3</u>,  <u>E. Perez-Lugo</u>, <u>Erron Campbell</u>, <u>Daniel Cherry.</u>

Plaintiff seeks **NO** monetary damages from Thomas Reimers, nor from FDC Secretary Mr. Inch. Plaintiff dos seek monatary damages from the FDC.

## PUNITIVE DAMAGES

Plaintiff seeks punitive damages in the amount of $500,000 from each Defendant in their individual capacity; Defendants **<u>Doe #1-3</u> <u>E. Perez-Lugo,</u> <u>Erron Campbell,</u> <u>Daniel Cherry</u>**, and the FDC. In doing so, Plaintiff states in sum that punitive damages are appropriate where the actions and inactions of these Defendants are reprehensible, in that the Defendants knew that their policy and practice as plead herein would result in Plaintiff's pain and suffering then an eventual excruciatingly painful death from cirrhosis of his liver and possible future liver cancer. That each Defendants conduct was motivated by evil intent, or it involved reckless or callous indifference to the federally protected 8th Amendment rights of Plaintiff—his serious medical need, the suffering caused by policy and practice of Defendants and now his untimely, eventual death. That each Defendant participated and ratified the policy of deprivation in furtherance of common scheme not to inform or treat—for profit. These actions and inactions were orchestrated and designed and ratified into policy and practice by these

Defendants and are cruel and have caused unnecessary and wanton infliction of pain. This intentional for profit policy and custom not to inform and to deny treatment constitute deliberate indifference to serious medical needs of Plaintiff and constituters the unnecessary and wanton infliction of pain.

## PROSPECTIVE INJUNCTIVE AND DECLARATION RELIEF

## MARK S. INCH,

Plaintiff seeks prospective injunctive relief for treatment, (recommendation for possible liver transplant when Plaintiff's liver reaches the future stage of decompensated cirrhosis of his liver cancer), ameliorative care, including pain medications, special vitamins and new prescription medications or medical procedures to assist in repairing or regrowing Plaintiff's severely damaged liver. {all to be determined at a later date}.

As for declaratory relief of Secretary Inch, Plaintiff prays that order enter finding that FDC acted in concert with Centurion not to advise prisoners of the 2014-2016 FBOP-CDC guideline change and in doing so, ultimately denied Plaintiff mandated evaluation and care. That FDC knew at the time of the award of the no-bid contract with Defendant Centurion, that funds would not be provided for treatment by Centurion and that per political aligeance with person(s) yet unnamed would not be solicited on behalf of the affected prisoners. That FDC acted in concert with Centurion to deny care in furtherance

of profit and without regard to humane, mandated care. That the conduct of each Defendant herein individually and collectively has violated Plaintiff's 8th Amendment guarantees to be free from cruel and unusual punishment.

**Prevailing party fees and suit costs.**

I declare under penalty of perjury that I have read the above and have had it explained to me by a Department of Correction Certified Law Clerk, and that the foregoing statements of fact, including all continuation pages, are true and correct. Dated this 16 day of July, 2021.

/s/ _Timothy Albritton_

TIMOTHY ALBRITTON, DC#479916, D2-108-1
Union Correctional Institution
P.O. Box 1000
Raiford, Florida 32083-1000


**<u>Mailing Certificate</u>**

I certify under penalty of perjury that this complaint was provided to UCI Correctional Staff for mailing in an envelope addressed to Office of the Honorable Clerk, United States District Court at 300 N. Hogan Street, Suite 9-150, Jacksonville, Florida 32202-42721 on: this 16 day of July, 2021.

/s/ _Timothy Albritton_

TIMOTHY ALBRITTON, DC#479916
Plaintiff, *pro se*